# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DONO BARKSDALE,

          Petitioner,

:

Case No. 3:09-cv-273

:

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

    -vs-

DEBORAH TIMMERMAN-COOPER,   :
    Warden,

        Respondent.       :

---

## REPORT AND RECOMMENDATION[1]

---

Pursuant to 28 U.S.C. § 2254, Petitioner Dono Barksdale ("Petitioner" or "Barksdale")

brings this petition for a writ of *habeas corpus*.  In the Montgomery County Court of Common

Pleas, he was convicted of various drug offenses and is serving seven years imprisonment in

Respondent's custody.  Proceeding *pro se*, Barksdale pleads four grounds for relief:

> **GROUND ONE**: The Petitioner was denied his Fourth Amendment Constitutional
> rights when the trial court erred in failing to suppress evidence seized from Petitioner
> made without probable cause.
>
> **Supporting facts**: The trial court erred in failing to suppress evidence seized from
> Petitioner made without probable cause.
>
> **GROUND TWO**: The Petitioner was denied his Fifth Amendment Constitutional
> rights.
>
> **Supporting facts**: When the trial court erred in failing to suppress evidence of
> statements attributed to Equal Protection Clause of the Fourth Amendment to the

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

United States Constitution.

**GROUND THREE**: The trial court erred.

**Supporting facts**: In overruling Appellant's motion for relief from prejudicial joinder of multiple counts contained in a separate indictment.

**GROUND FOUR**: The trial court error.

**Supporting facts**: In suspending Appellant's driver's license for a period of seven years.

(Pet., Doc. 2) (capitalization altered) (quoting verbatim).

## I. PROCEDURAL HISTORY

Barksdale was indicted by two Montgomery County grand juries -- in July 2005 and November 2005 -- on eleven drug-related offenses in Case No. 2005 CR 02986.[2] (Exs. 1 & 2 to Return of Writ, Doc. 5-2, at PAGEID 64-70.)  With the assistance of counsel, Barksdale moved to suppress (1) evidence seized upon his arrest, and (2) his statements made to the police after his arrest. (Ex. 5 to Return of Writ, Doc. 5-2, at PAGEID 75-76.)  In addition, Barksdale filed a motion to disclose the identity of a confidential informant.  (Ex. 4 to Return of Writ, Doc. 5-2, at PAGEID 72-74.)  However, the trial court overruled both motions.  (*See* Exs. 6 & 7 to Return of Writ, Doc. 5-2, at PAGEID 79-90.)    In addition, Barksdale filed a motion to sever his trial, arguing that the case involved drug sales on three separate dates, but the trial court overruled that motion as well.

---

[2] In July 2005, Barksdale was indicted on one count of possession of crack cocaine (at least 25 grams but less than 100 grams); one count of possession of heroin (at least 1 gram but less than 5 grams); two counts of trafficking in crack cocaine (at least 25 grams but less than 100 grams); one count of tampering with evidence; and two counts of possession of criminal tools. (Indictment, Doc. 5-2, PAGEID 64-66.)  In November 2005, Barksdale was indicted on two counts of trafficking in crack cocaine (at least 25 grams but less than 100 grams); one count of trafficking in crack cocaine (at least 1 gram but less than 5 grams); and one count of trafficking in crack cocaine (more than 100 grams).  (Indictment, Doc. 5-2, PAGEID 69-70.)

(Exs. 7-A & 7-B to Return of Writ, Doc. 5-2, at PAGEID 91-94.)

Following the denial of his pretrial motions, Barksdale pled no contest to five counts, while the remaining six counts were dismissed. (Exs. 8-11 to Return of Writ, Doc. 5-2, at PAGEID 95-102.)[3] Barksdale was sentenced to a total of seven years. (Ex. 12 to Return of Writ, Doc. 5-2, at PAGEID 103-04.)

Additionally, in June 2006, Barksdale was separately indicted on one count of possession of crack cocaine (less than one gram) in Case No. 2006-CR-01565. (Ex. 13 to Return of Writ, Doc. 5-2, PAGEID 105.) Barksdale pled no contest and was sentenced to twelve months, to be served concurrently with his sentence imposed in Case No. 2005-CR-2986. (Exs. 14 & 15 to Return of Writ, Doc. 5-2, at PAGEID 108-10.)

## A. Direct Appeal

Barksdale filed an untimely Notice of Appeal on October 19, 2006, three days after the 30-day limitation period under Ohio Appellate Rule 4(A). (Ex. 17 to Return of Writ, Doc. 5-2, at PAGEID 112.) Based on Barksdale's response to its Show Cause Order, the Court of Appeals permitted Barksdale to proceed with a delayed appeal. (Ex. 20 to Return of Writ, Doc. 5-2, at PAGEID 118-19.) With the assistance of counsel, Barksdale raised four assignments of error:

I.      Appellant was denied his Fourth Amendment Constitutional rights when the court erred in failing to suppress evidence seized from Appellant's person subsequent to an arrest of the Appellant made without probable cause.

II.     Appellant was denied his Fifth Amendment Constitutional rights when the court erred in failing to suppress evidence of statements attributed to Appellant subsequent to his arrest.

---

[3]Specifically, Barksdale pled no contest to possession of crack cocaine (25g - 100 g); tampering with evidence; possession of heroin (1g-5g); and two counts of trafficking in crack cocaine (1g-5g). (Exs. 8-11 to Return of Writ, Doc. 5-2, at PAGEID 95-102.)

II. The trial court erred i[n] overruling Appellant's motion for relief from prejudicial joinder of the multiple counts contained in separate indictments.

IV. The trial court erred in suspending Appellant's driver's license for a period of seven years.

(Ex. 21 to Return of Writ, Doc. 5-2, at PAGEID 120-37.) The Ohio Court of Appeals overruled the first three assignments of error, affirming his conviction. (Ex. 23 to Return of Writ, Doc. 5-2, at PAGEID 153-62.) However, it sustained the fourth assignment of error and modified his driver's license suspension to five years. (*Id.*)

Barksdale failed to timely appeal the Ohio Court of Appeals' decision. (*See* Ex. 24 to Return of Writ, Doc. 5-2, at PAGEID 163-64.) Instead, he filed a motion for delayed appeal, which the Ohio Supreme Court granted. (Exs. 25 & 26 to Return of Writ, Doc. 5-2, at PAGEID 165-79.) Barksdale raised the same arguments as he did on appeal to the Ohio Court of Appeals. (*See* Ex. 27 to Return of Writ, Doc. 5-2, at PAGEID 180-95.) The Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Ex. 29 to Return of Writ, Doc. 5-2, at PAGEID 197.)

## B. Post-Conviction Appeal

Barksdale filed a "motion to correct void judgment for failure to follow statutory sentencing requirements" in the trial court, arguing that the sentencing judge failed to conduct a consistency analysis. (Ex. 30 to Return of Writ, Doc. 5-2, at PAGEID 198-207.) On July 23, 2009, the court overruled Barksdale's motion. (Ex. 33 to Return of Writ, Doc. 5-2, at PAGEIDID 219.)

## II. ANALYSIS

## A. AEDPA Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state

court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

A state court decision is considered "contrary to . . . clearly established Federal law" when it is "diametrically different, opposite in character or nature, or mutually opposed." *Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (citation omitted). To be deemed "an unreasonable application of . . . clearly established Federal law," a state court's decision must be "'objectively unreasonable,' not simply erroneous or incorrect." *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009) (citation omitted). Further, under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless the petitioner rebuts them by clear and convincing evidence. *Id.* This statutory presumption of correctness also extends to factual findings made by state appellate courts' review of trial court records. *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003).

However, a *habeas* court cannot review a constitutional claim on the merits unless the petitioner previously presented the claim to the state's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45, 848 (1999). Thus, if (1) the state court rejected the petitioner's claim based on his or her failure to comply with the state procedural rules, or (2) the petitioner failed to exhaust his state court remedies and no avenue of relief remains open, or it would otherwise be futile to pursue the state remedies, the petitioner has waived that claim for *habeas* review under the procedural default doctrine. *In re Abdur'Rahman*, 392 F.3d 174, 186-87 (6th Cir. 2004) (overruled on other grounds).

## B.  Ground One

In Ground One, Barksdale contends that evidence obtained in violation of the Fourth Amendment was admitted as evidence against him.  Specifically, he argues that the police did not have probable cause to arrest him.

However, as the State points out, this is not a cognizable *habeas* claim.  Federal *habeas corpus* relief is not available to state prisoners who allege they were convicted on illegally seized evidence, as long as they were given a full and fair opportunity to litigate that question in the state courts.  *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  Under *Stone*, the district court first "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim," and then evaluate whether the petitioner's presentation of the claim was frustrated due to a failure in the state mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982*).*

The Ohio Rules of Criminal Procedure and Appellate Procedure provide defendants with an adequate procedural mechanism to assert a Fourth Amendment claim.  *Id.*  Further, Arnold utilized his procedural opportunities by filing a pretrial motion to suppress (Ex. 5 to Return of Writ, Doc. 5-2, at PAGEID 75-76), and by directly appealing the trial court's denial of his motion.  (Ex. 21 to Return of Writ, Doc. 5-2, at PAGEID 120-37.)  Barksdale has not alleged that his ability to litigate was frustrated in any manner.  Therefore, Ground One is barred under *Stone v. Powell* and should be dismissed.

## C.  Ground Two

In Ground Two, Barksdale argues that his rights under the Fifth Amendment and Equal Protection Clause were violated when the trial court refused to suppress his statements obtained in

violation of his *Miranda* rights.[4]  Specifically, Barksdale asserts the police failed to demonstrate that

he was informed of his *Miranda* rights, and that he knowingly and voluntarily waived them.

As a preliminary matter, the State argues that Barksdale's Equal Protection argument is

procedurally defaulted for failing to present it to the state courts.  To preserve a federal

constitutional claim for *habeas* relief, the legal and factual basis of the claim  must be "fairly

presented" to the state courts so that they have an opportunity to remedy the alleged constitutional

violation.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).  Ordinarily, a federal claim is

not "fairly presented" to a state court if that court must read beyond the filings to alert it such a

claim.  *See Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). The following factors indicate that a

federal constitutional claim was fairly presented to the state courts:

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional
> law or in terms sufficiently particular to allege a denial of the specific constitutional
> right in question; (2) the petitioner relied upon federal cases employing the
> constitutional  analysis in question; (3) the petitioner relied upon state cases
> employing the federal constitutional analysis in question; or (4) the petitioner alleged
> "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (citation omitted).

Here, Barksdale's Equal Protection claim was not fairly presented to the state courts. In

addressing this claim in his appellate brief, Barksdale did not mention the Equal Protection Clause.

 (*See* Ex. 21 to Return of Writ, Doc. 5-2, at PAGEID 120-37.)  Likewise, he does not refer to any

federal or state cases analyzing a *Miranda* violation under the Equal Protection Clause.  (*See id.*)

Finally, Barksdale did not allege "facts well within the mainstream of [the pertinent] constitutional

law."  *Hicks*, 377 F.3d at 553 (citation omitted).  (*See* Ex. 21 to Return of Writ, Doc. 5-2, at

---

[4]Barksdale never specifies the content of the statements he made to the police.

PAGEID 120-37.) Rather, Barksdale only challenged the admission of his statements under the

Fifth Amendment. (*See id.*)

On the other hand, his Fifth Amendment claim is not procedurally defaulted. In addressing

this claim the merits, the Ohio Court of Appeals held:

> Barksdale claims that the state failed to prove that it had adequately informed him of his rights to remain silent and to have an attorney before questioning him and failed to prove that he had knowingly and voluntarily waived those rights.
>
> Barksdale was questioned at the hospital after he was treated for injuries he had sustained during his arrest. Sergeant Spiers testified that he read Barksdale each of the rights verbally, then asked him after each right whether or not he understood them. Spiers stated that he read the rights off of his "rights card," but the card was not admitted into evidence. Spiers did not specifically enumerate the rights he read to Barksdale. Spiers also testified that Barksdale did not appear to be under the influence of any drugs or alcohol at the time of the interview, but he had not specifically inquired about this fact.
>
> Barksdale argues that the state failed to meet its burden to show Barksdale had been informed of all of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L.E.2d 694, and had voluntarily waived them.
>
> The trial court reasonably concluded that Barksdale had been fully informed of his rights and had knowingly waived them. Spiers' testimony supported this conclusion. There is no requirement that testimony be offered as to each right specifically, or that the rights card from which the officer read be placed into evidence, although such a practice might be well advised. Moreover, Spiers testified that Barksdale did not appear to be under the influence of any medication or other drugs during the interview. Thus, the court reasonably denied Barksdale's motion to suppress the statements made to Spiers.
>
> The second assignment of error is overruled.

*State v. Barksdale*, No. 21848, at 5-6 (Ohio Ct. App. Jan. 18, 2008); (Ex. 23 to Return of Writ, Doc.

5-2, at PAGEID 157-58.)

With regard to the Fifth Amendment, Barksdale alleges that the police officer *failed to prove*

that he was advised of each right specifically. (Traverse, Doc. 7, at PAGEID 336-37.) In support

his argument, Barksdale cites to the following testimony given by the interrogating police office

during the suppression hearing:

Q:      All Right.  And so, Sergeant, on that early morning hours of July 21st when you were at Good Samaritan Hospital with the defendant, can you tell the Court just briefly, you advised the defendant of his rights?

A:      Yes, I did.

Q:      And did you do that verbally or in writing?

A:      I did it verbally right from the card.

Q:      Okay, And when you advise a defendant of this right verbally, do you state each right individually and then ask him after each right whether or not he understands them; or do you, in fact, read them all the rights and then ask them if they have any at the end?

A:      No, after each right, I'll ask they if they understand that right before I proceed to the next one.

(*Id.* at PAGEID 336) (quoting Motion to Suppress transcript).  However, Barksdale does not contend that the police failed to inform him of his rights.  Even if Barksdale had made such an argument, it would be refuted by the record.  At the suppression hearing, the interrogating officer testified that he read Barksdale his rights and Barksdale did not testify, or present other evidence, to refute the officer's testimony.   (Doc. 6-2, at PAGEID 285-91.)

Likewise, the record does not support Barksdale's claim that his *Miranda* waiver was invalid. A *Miranda* waiver must be made voluntarily, knowingly, and intelligently.  *Moran v. Burbine*, 475 U.S. 412, 420-21(1986).  In making such a determination, a court must make two separate inquiries:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.* at 421. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2262.   An officer is not required to obtain a written *Miranda* waiver. *See Berghuis v. Thompkins*, ___U.S. ___, 130 S. Ct. 2250, 2261 (2010).

To establish that a *Miranda* waiver was involuntary, the criminal defendant must show that

his free will was overborne as a result of coercive police conduct. *Colorado v. Spring*, 479 U.S. 564, 574 (1987). Here, Barksdale merely points to circumstances surrounding the police interrogation -- that it took place in the hospital approximately thirty to forty-five minutes after he had been struck and tazed by the police; and the police officer never asked whether Barksdale was on any medication -- to support his claim. (Traverse, Doc. 7, at PAGEID 337-38.) Those facts alone do not establish that his *Miranda* waiver was involuntary. Barksdale has not claimed that the police engaged in overreaching or other misconduct. Nor has he cited any Supreme Court precedent establishing that those circumstances alone are inherently coercive. Therefore, the Ohio Court of Appeals' decision -- that Barksdale was fully informed of his *Miranda* rights and voluntarily waived them -- was not contrary to clearly established federal law. To determine whether a waiver was knowing and intelligent, a court should consider the totality of the circumstances -- "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It is not necessary that the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). Barksdale has the burden of establishing that his *Miranda* waiver was not knowing and intelligent. *Garner*, 557 F.3d at 261. Further, unless refuted by contrary evidence, a court can rely on a police officer's perception that the defendant was able to understand the *Miranda* warnings and waive them. *Id.* at 262-63.

Here, in light of the interrogating officer's testimony regarding his perception of Barksdale's mental state, Barksdale's argument fails. Specifically, the officer testified that while interviewing Barksdale at the hospital, he had no reason to believe that Barksdale was incapable of understanding

his rights, *i.e.,* there was no indication that Barksdale was under the influence of drugs, alcohol, or medication. (Doc. 6-1, at PAGEID 285-91.) Barksdale has not presented any evidence demonstrating he lacked the mental ability to understand his rights. (*See id.*)

Therefore, the record indicates that Barksdale knowingly, intelligently and voluntarily waived his *Miranda* rights. Accordingly, the Court of Appeals' decision was not contrary to clearly established federal law and Barksdale is not entitled to *habeas* relief on Ground Two.

### D. Grounds Three and Four

In Ground Three, citing to Ohio case law, Barksdale argues that the trial court erred in failing to grant his motion to sever his indictments for trial. In Ground Four, Barksdale claims that the trial court erred by suspending his driver's license for seven years, in violation of Ohio Revised Code § 2925.11.[5] Both of these claims should be dismissed because they only arise under state law and are therefore not cognizable federal *habeas corpus* claims.

Federal *habeas corpus* is only available to correct violations of federal law. 28 U.S.C. § 2254(a). "It is not in the province of a federal *habeas* court to reexamine state court determinations on state law questions. In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Further, the federal constitutional claim must be presented to the state courts, and merely using talismanic constitutional phrases, such as "fair trial" or "due process of law," is insufficient. *Slaughter v. Parker*, 450 F.3d 224, 235-36 (6th Cir. 2006).

Here, Barksdale framed Grounds Three and Four as questions of state law -- both on direct

---

[5]Barksdale's claim concerning his driver's license suspension is also without merit because the Ohio Court of Appeals modified his suspension to five years, an acceptable term under Ohio Revised Code § 2925.11.

appeal and in his *habeas* petition.[6]  (Ex. 21 to Return of Writ, Doc. 5-2, at PAGEID 120-37; Traverse, Doc. 7.)  He did not mention any constitutional phrases, or cite to any federal cases or state cases applying federal law.  In other words, he failed to "federalize" these claims.

Therefore, Grounds Three and Four should be dismissed because they are not cognizable federal *habeas* claims.  Alternatively, dismissal is appropriate because even if the claims implicate federal constitutional issues, Barksdale failed to adequately present any federal constitutional claims to the state courts.

## III.  RECOMMENDATION

It is therefore **RECOMMENDED** that Barksdale's §2254 petition for a writ of *habeas corpus* be denied with prejudice and this case be **TERMINATED** on the Court's docket.

October 13, 2011                                                    s/ **Michael J. Newman**
                                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

---

[6] In fact, it appears that Barksdale copied and pasted the argument in his brief filed on direct appeal into the Traverse to his *habeas* proceeding.  *Compare* (Ex. 21 to Return of Writ, Doc. 5-2, at PAGEID 120-37) *with* (Traverse, Doc. 7.)

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), ©, or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).